IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

AMSTAR MORTGAGE CORPORATION AND
JERRY THOMPSON                                                                                    PLAINTIFFS

V.                                                                        CIVIL ACTION # 2:07cv104-KS-MTP

INDIAN GOLD, LLC, AND TIMOTHY SHARP                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Plaintiffs' motion for summary judgment [# **11**] to compel arbitration. Because the Defendant Indian Gold has failed to raise a genuine issue of material fact that would prevent the Court from compelling its claims against Plaintiffs Amstar and Thompson to arbitration under the *Grigson* principal of equitable estoppel, the motion for summary judgment is **granted** as to Indian Gold's claims. Because the Defendant Sharp has raised a genuine issue of material fact to prevent the Court from compelling him to arbitrate his claims against Amstar and Thompson under the *Grigson* principal of equitable estoppel, the motion for summary judgment is **denied** as to Sharp's claims.

FACTUAL BACKGROUND

The underlying dispute in this case arises out of a developer's attempt to finance the construction of a golf course in Lauderdale County, Mississippi. Indian Gold LLC ("Indian Gold"), the limited liability company attempting to build the course, sought approximately $8,500,000 to fund the project. The managing member of the LLC, Timothy K. Sharp ("Sharp"),

1

represented Indian Gold for all purposes relevant to the suit.  In early 2005, Sharp worked with several non-parties that eventually put him into contact with Amstar Mortgage Corporation ("Amstar") to secure financing for the development.

On January 6, 2005, Indian Gold entered into a client-broker agreement ("the client-broker agreement") with Amstar to arrange the loan.  Amstar was represented at all times relevant to this suit by its agent Jerry R. Thompson ("Thompson") of the Amstar Mortgage Commercial Divison.  Sharp told Thompson that Indian Gold needed $8,500,000 to fund their project, and Thompson agreed, on behalf of Amstar, that he would seek out a suitable loan.  Thompson further agreed that he and Amstar would represent Indian Gold in acquiring the loan, and would negotiate and apply for all financing on behalf of Indian Gold.  Thompson eventually selected Commercial Mortgage Loan Corporation ("CMLC") to provide the financing for the project.[1]

On January 10, 2005, CMLC sent a "letter of intent to issue a standby forward commitment to provide a future loan" to confirm their participation in the financing.  The letter, addressed to Indian Gold and Amstar, instructed Indian Gold to "deposit with the CMLC credit facility the sum of $42,500.00" as a good faith deposit before CMLC would fund the loan.  Indian Gold made the preliminary payments to CMLC as requested.

On January 12, 2005, CMLC, Indian Gold, and Amstar signed a non-circumvention

---

[1] As discussed *infra*, the Court remains unclear as to organization of CMLC and the relationship between CMLC and the named parties, particularly Amstar and Thompson.  In the complaint in the underlying proceeding, CMLC is referred to as "a commercial lender located in San Juan Capistrano, California."  Indian Gold and Sharp later advanced the theory that CMLC is merely an *alter ego* of Amstar and Thompson, and the latter parties have not actively disputed this contention.  Thompson has also referred to CMLC in correspondence as "our credit facility."  The Court interprets the evidence as submitted to determine that CMLC is a corporation closely affiliated with Amstar, and operates in concert with Amstar for purposes relevant to this action.  The Court further determines that the precise corporate status of CMLC is immaterial for its consideration of the summary judgment motion.

agreement, whereby Indian Gold agreed it would not circumvent any loan sources that CMLC introduced to Indian Gold. The agreement also stated that CMLC was not yet guaranteeing financing for the project, and that CMLC would be held harmless from any failure to provide the financing.

On January 21, 2005, the deal finally closed, as CMLC and Indian Gold signed a loan commitment agreement ("the loan agreement") to provide a loan in the amount of $8,500,000.00. The agreement, signed by Sharp in his capacity as managing member of Indian Gold, contained an arbitration clause stating the following:

> Commerical Mortgage Loan Corp., the Borrower, and any parties hereto agree that any and all disputes concerning fees or costs in connection with CMLC's mortgage products and services shall be submitted to binding arbitration before a retired judge of the Orange County, California Superior Court, who is satisfactory to all parties.

Despite the commitment made by CMLC, the funding for the loan failed to materialize. On March 18, 2005, Thompson sent a letter to Sharp and Indian Gold to "confirm our company's commitment to fund the above loan." In that letter, Thompson identified CMLC as "our credit facility" and promised that the loan would close on or before April 29, 2005. Despite the repeated promises made by Amstar on behalf of CMLC, the loan was never funded.

After the loan failed to close, Indian Gold and Sharp filed the underlying proceeding styled *Indian Gold, LLC and Timothy K. Sharp v. Amstar Mortgage Corporation and Jerry Thompson*, 2:07cv00084, against Amstar and Thompson, as well as current non-parties Michael Raybourn and his company Magnolia Financial Consultants. The complaint in the underlying proceeding alleges the following counts: (1) Breach of Duty of Good Faith and Fair Dealing; (2) Tortious Interference with Contract and Business Relations; (3) Indemnification; (4) Fraudulent

Concealment of Material Facts; (5) Breach of Contract; (6) Fraudulent Inducement; (7) Promissory Fraud; (8) Civil Conspiracy; (9) Gross Negligence; and (10) Unjust Enrichment. Indian Gold and Sharp seek $42,500.00 in damages from Amstar and Thompson for unjust enrichment, and other unspecified damages for economic losses, emotional distress, physical pain and suffering, alleged harm to their business and professional reputations, and attorney's fees.

With the underlying suit still pending, Amstar and Thompson filed this action against Indian Gold and Sharp to compel arbitration under the Federal Arbitration Act. Amstar and Thompson then moved for summary judgment on the merits to compel Indian Gold and Sharp to arbitrate their claims raised in the underlying suit.

On August 20, 2007, this Court denied a motion to remand in the underlying suit by Indian Gold and Sharp, the plaintiffs in that action. Because the Court has determined that it can exercise jurisdiction over the underlying suit, it can now exercise jurisdiction over the complaint to compel arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 n.32 (1983).

## STANDARD OF REVIEW

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept.*

*of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).

If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007).

The Federal Arbitration Act ("FAA") was enacted to overcome judicial resistance to arbitration by establishing a national policy in favor of arbitration and placing arbitration agreements on the same footing as other contracts. *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 445 (2006). The pro-arbitration policy leads the courts to resolve doubts in favor of arbitration. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). The impulse is so strong that arbitration should not be denied "unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Personal Security and Safety Sys., Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).

In considering whether arbitration should be compelled under the FAA, courts conduct a two-step process. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, the court first determines whether the parties agreed to arbitrate the dispute. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). That question depends on

whether: (1) there is valid agreement to arbitrate between parties; and (2) the dispute in question falls within the scope of that arbitration agreement. *Safer v. Nelson Fin. Group, Inc*., 422 F.3d 289, 293-94 (5th Cir. 2005).  If both prongs are met, then the court will compel the dispute to arbitration so long as there is no "federal statute or policy [that] renders the claims non-arbitrable." *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992).

## AGREEMENT TO ARBITRATE

Although the loan agreement contained an arbitration clause, only one Defendant in this action, Indian Gold, signed that agreement.  The Plaintiffs in this action, Amstar and Thompson, did not sign the agreement containing the provision, and no agreement signed by Amstar or Thompson contains an arbitration clause.  Moreover, Defendant Sharp did not sign any agreement, in his individual capacity, with an arbitration provision.  As such, the only writing that can form the basis of the complaint to compel arbitration is the loan agreement, signed by Sharp as managing member of Indian Gold, and by an authorized representative of CMLC.

Because of the unique mix of signatories and non-signatories,  this case requires the Court to answer two distinct questions.  First, the Court will consider whether the non-signatories Amstar and Thompson can compel the signatory Indian Gold to arbitrate its dispute against them.  Second, the Court will consider whether the non-signatories Amstar and Thompson can compel another non-signatory, Sharp, to arbitrate his dispute against them.  The Court will examine whether Sharp or Indian Gold have raised any genuine issues of material fact that would prevent the Court from granting summary judgment and compelling their respective claims against Amstar and Thompson to arbitration.

<u>Can the non-signatories Amstar and Thompson compel the signatory Indian Gold to arbitrate?</u>

Arbitration is "a matter of contract between...parties." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Arbitration is not required simply because two disputes merely arise out of the same transaction. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1 (1983). It remains a "matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989). Because neither Amstar nor Thompson were parties to the arbitration agreement with Indian Gold, the court can only compel Indian Gold to arbitrate its dispute against them under the principal of equitable estoppel.[2]

The Fifth Circuit first articulated when a non-signatory could compel arbitration in *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528-29 (5th Cir. 2000).[3] In *Grigson*, the appeals court found signatories estopped from preventing arbitration of their disputes with non-signatories when: (1) the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory (the direct-benefits prong); or (2) when the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract (the concerted-misconduct prong). *Id.* Equitable estoppel is "more readily applicable when the case presents both independent bases" for its application. *Id.* at 527. Yet if either basis to compel

---

[2] The Fifth Circuit has written that "an agreement to arbitrate is a waiver of valuable rights that are both personal to the parties and important to the open character of our state and federal judicial systems–an openness this country has been committed to from its inception." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).

[3] In *Grigson* the Fifth Circuit adopted a test espoused by the Eleventh Circuit in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

is available, it remains within the district court's equitable discretion. *Id.* at 528.[4]

The purpose of the *Grigson* test is to prevent the nonsignatory from being "liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory." *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir. 2002).  But the reverse of *Grigson* remains impossible, as a signatory plaintiff cannot estop a non-signatory defendant from objecting to arbitration. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003).

The Court first looks to the direct-benefits prong of *Grigson*.  As stated, this case involves a non-signatory plaintiff attempting to compel arbitration against a signatory defendant. The claims asserted by the signatory defendant, Indian Gold, are premised entirely on the loan agreement that contained the arbitration provision.[5]  Indian Gold asserts that it was due financing under the loan agreement, and that it suffered substantial losses when that money never materialized.  These losses include the $42,500 fee paid to CMLC to secure the loan, as well as over $1 million expended by Indian Gold in reliance on the loan.  Because the loan agreement creates the rights that Indian Gold claims were violated, the loan agreement does more than merely "touch matters" in the underlying dispute.  In fact, Indian Gold "must rely on the terms of

---

[4]If neither basis to apply equitable estoppel exists, the Fifth Circuit has refused to permit district courts to do so. *Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002) ("Westmoreland's suit does not rely upon the terms of the shareholder agreement or seek to enforce any duty created by the agreement, and there is no allegation that Sadoux acted in concert with anyone.").

[5]When the claims alleged are not premised on the underlying agreement, other circuits have refused to apply equitable estoppel. *See Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) ("This claim is a statutory remedy under the Fair Credit Reporting Act and is wholly separate from any action or remedy for breach of the underlying mortgage contract that is governed by the arbitration agreement...the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims, which are wholly unrelated to the underlying mortgage agreement, to be intertwined with that contract.").

the written agreement in asserting its claims against the nonsignatory," because without the agreement those claims would not exist. *Hill v. G.E. Power Sys., Inc.*, 282 F.3d 343, 349 (5th Cir. 2002). Without the rights fixed by contract, Indian Gold cannot pursue claims that it was damaged by the failure to receive financing, because only the loan agreement itself guaranteed such financing.[6] As a result, the Court finds that the direct-benefits prong of *Grigson* satisfied. *See also J.P. Morgan Chase Bank, N.A. v. Oklahoma Oncology & Hematology, P.C.*, 2007 WL 646372 (S.D. Tex. Feb. 26, 2007) (finding *Grigson* met when signatory relies on terms of contract with arbitration provision to assert claims against nonsigatory).

Indian Gold counters this *Grigson* direct-benefits analysis by arguing that its claims are premised exclusively on "Amstar and Thompson's mortgage products and services" and not "CMLC's mortgage products and services," the focus of the arbitration provision. They further argue that the wording of the arbitration provision is too narrow to permit the application of equitable estoppel against Indian Gold. The Court finds their reasoning unpersuasive.

First, the narrow wording in the arbitration clause does not demonstrate that the parties meant to prevent the application of equitable estoppel.[7] Although equitable estoppel cannot give non-parties a greater right to arbitration that the parties themselves have, the more restrictive

---

[6]The complaint alleges generally that the "Defendants breached their contractual agreement" to provide the $8.5 million in financing, and that the "Defendants fraudulently concealed from the Plaintiffs that they never had any intention of procuring and providing financing." Both of these claims are premised exclusively on Indian Gold's rights under the loan commitment that contained the arbitration clause.

[7]In *MS Dealer*, the Eleventh Circuit did not prevent application of equitable estoppel of tort claims against a non-signatory service corporation, when the provision limited disputes "between the buyer and Jim Burke Motors, Inc., arising out of or in connection with the purchase of this vehicle." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 944 (11th Cir. 1999). Because the underlying action is based on "disputes concerning fees or costs in connection with CMLC's mortgage products and services," the Court finds the reasoning of the Eleventh Circuit persuasive.

wording of the CMLC clause does not limit its application here. The terminology only suggests that Indian Gold and CMLC ensured that the agreement would apply to disputes between them, and does not suggest that they wanted to preclude their respective ability to estop a third-party from using the contract as both sword and shield.[8] By itself, such narrow wording cannot block the application of equitable estoppel under *Grigson*.

Next, the sum of Indian Gold's allegations make their claim that they do not rely on the loan agreement untenable. Indian Gold has articulated no cognizable rights under its client-broker agreement with Amstar or Thompson, distinct from the loan agreement, that would support an award of damages. The client broker agreement signed by Amstar and Thompson did not guarantee financing, so it could not support damages if financing fell through. And because the complaint is generally averred against all defendants, even though CMLC is not a named defendant, the Court cannot see these general allegations as being a complaint distinct or separate from CMLC's mortgage products and services.

Finally, Indian Gold advances the theory that CMLC was "fabricated" by Amstar and Thompson to perpetuate a fraud, or was "concocted" by Amstar and Thompson for an illegal purpose. If CMLC was the *alter ego* of Amstar and Thompson, then mortgage products and services of CMLC would essentially be mortgage products of Amstar and Thompson. Therefore, a claim by Indian Gold premised on what it calls "Amstar and Thompson's mortgage services" is synonymous with a claim against CMLC's mortgage services, by definition premising Indian

---

[8]*See Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 306-7 (Tex. 2006). Although the underlying dispute has the signatory Indian Gold attempting to prevent the application of equitable estoppel to benefit the non-signatories Amstar and Thompson, the same reasoning applies to a scenario where Indian Gold might desire to use equitable estoppel to compel Amstar and Thompson to arbitration, if Indian Gold were being sued by Amstar and Thompson under the same provision of the agreement. So long as the dispute itself comes under the terms of the arbitration clause, the narrower wording of the parties does not exclude the use of equitable estoppel in either instance.

Gold's claims against Amstar and Thompson on the loan agreement it signed with CMLC.  If the plaintiffs to the underlying action do not see the non-party signatory as separate from the parties that are non-signatories, then this Court can do no better in articulating a distinction.

Finding the direct-benefits prong satisfied, the Court next applies the *Grigson* concerted-misconduct prong.[9]  As stated above, Indian Gold and Sharp raise allegations of substantially interdependent and concerted misconduct by the signatory CMLC and the non-signatories Amstar and Thompson.  First, the complaint in the underlying action is generally averred against all defendants, making it impossible for the Court to separate out the culpable actor in each count.[10]  Second, the complaint is littered with references of substantially interdependent and concerted misconduct by CMLC, Amstar, and Thompson, the latter two accused of colluding with the former for fraudulent purposes.  Indian Gold goes even further than collusion in asserting that CMLC was "fabricated...in furtherance of the fraud" against Indian Gold and Sharp.[11]  Combining the above, the Court finds that the alleged activity of CMLC cannot be severed from that of Amstar or Thompson, and hence the concerted-misconduct prong of *Grigson* is satisfied. *See Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 399 (5th Cir. 2006) ("as the [plaintiffs] fail to allege tortious acts by [non-signatories] that are separate and apart from

---

[9] In a recent opinion, the Texas Supreme Court interpreted *Grigson* and its progeny in federal arbitration law to hold that only a showing of the concerted-misconduct prong is insufficient to compel arbitration. *In re Merrill Lynch Trust Co. FSB*, 2007 WL 2404845 at *5 (Tex. Aug. 24, 2007).

[10] This ambiguity is exacerbated by the failure of Indian Gold or Amstar to better define the relationship between Amstar and CMLC.  Despite any attempt by Indian Gold to articulate a distinct or severable claim against Amstar unrelated to CMLC, the Court finds that "the heart of each claim is the plaintiff's allegation that all the defendants acted in concert to fraudulently" injure him. *Jureczki v. Bank One Texas, N.A.,* 252 F. Supp. 2d 368, 376 (S.D. Tex. 2003).

[11] The fact that Amstar or Thompson might be agents of CMLC is not itself enough to compel arbitration, as "a nonsignatory cannot compel arbitration merely because he is an agent of one of the signatories." *Westmoreland v. Sadoux*, 299 F.3d 462, 466 (5th Cir. 2002).

[signatories], we can only conclude that the complaint asserts concerted misconduct by all parties.").[12]

Although the two *Grigson* tests help the Court apply equitable estoppel, the Fifth Circuit has identified "fairness" as the "linchpin" of the inquiry. *Grigson*, 210 F.3d at 528; *see also Bank One Arizona, NA v. Wilton Hurst G.P. Corp.*, 2001 WL 276891 at *2 (N.D. Tex. Mar. 19, 2001) (focusing on fairness inquiry to preclude bank from avoiding arbitration agreement by bringing action just against non-signatory charged with action in concert with non-defendant signatory). The fairness inquiry ultimately works against Indian Gold because it agreed in writing to submit its disputes under the loan agreement to arbitration. Despite the primacy of their agreement with CMLC, Indian Gold appears to have strategically ignored them in bringing the underlying action, and has attempted to sidestep its duties under the arbitration agreement by bringing suit exclusively against Amstar and Thompson. Fairness mandates that Indian Gold be required to submit its claims against Amstar and Thompson to arbitration, where they could be joined by CMLC in reaching the merits of their grievances.

Aside from the *Grigson* tests, the Defendants argue that allegations of fraud prevent the application of equitable estoppel to compel arbitration. First, they assert that the Plaintiffs in this case come to the court with unclean hands, which precludes application of the equitable doctrine in their favor. Yet permitting allegations of fraud to undercut the arbitration provision would

---

[12]When the claims do not involve concerted conduct, district courts have refused to compel arbitration under the Grigson analysis.. *See Celanese Corp. v. BOC Grp. PLC*, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006). The *Celanese* court refused to apply equitable estoppel when a number of the claims involved separate and distinct torts, not within the scope of the agreement. *Id.* at *7 ("The Court cannot compel the nonsignatory plaintiff to arbitrate their claims under an arbitration provision between the other plaintiff and an entity not a party to this action."); *see also Reynolds v. York*, 2003 WL 22880945 at *5 (S.D. Tex. Nov. 21, 2003) (declining to apply equitable estoppel when there was no allegation of concerted action nor any claim that was premised on the underlying agreement).

12

make the contract meaningless, as any allegation of fraud would prevent a signatory from being compelled to ever arbitrate their dispute with either a signatory or non-signatory. With no guidance from appellate courts on this issue, the Court cannot find it sufficient to undermine the *Grigson* application.

Moreover, the notion of denying arbitration based on the generic fraud claim cuts against consistent Supreme Court authority, holding that "unless the challenge is the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc v. Cardegena*, 546 U.S. 440, 445-46 (2006). The Fifth Circuit has agreed that if claims of fraud "do not specifically address the arbitration agreement itself, they are properly addressed by the arbitrator, not a federal court." *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006). Because the claims of fraud alleged by the Defendants to this action touch on the entire agreement, and are not focused on the arbitration clause itself, the Court finds it improper to hold that such allegations can defeat the analysis to compel arbitration of the dispute.

<u>Can the non-signatories Amstar and Thompson compel to arbitration the claims of another non-signatory, Sharp?</u>

Next, the Court must examine whether a non-signatory can compel another non-signatory to arbitration. Indian Gold and Sharp assert that a non-signatory cannot compel another non-signatory to arbitration, and hence Sharp cannot be compelled to arbitrate his dispute with Amstar and Thompson. In response, Amstar and Thompson cite two cases that they claim stand for the proposition that a non-signatory can compel another non-signatory to submit their dispute

to arbitration. Upon a careful analysis of this authority, the Court concludes that neither case is on point with the facts of this action.[13]

In *Bailey*, the Fifth Circuit allowed four non-signatory insurance companies to compel arbitration against the non-signatory wife of a debtor. *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004). There, the court determined that "ordinary principles of contract and agency law" can bind certain non-signatories to the terms of an arbitration agreement. *Id*. Specifically, the court determined that the wife of a borrower who did not sign the agreement containing the arbitration clause could be compelled to arbitrate her dispute with the bank that signed the agreement and four other insurance entities that did not sign the agreement. *Id.* The court used the equitable estoppel analysis to determine that the non-signatory wife of the signor was estopped from avoiding arbitration because she was "suing based upon one part of a transaction that she says grants her rights while simultaneously attempting to avoid other parts of the same transaction that she views as a burden." *Id*. at 268.

But *Bailey* diverges from the current case in that the arbitration clause used there was significantly broader. That arbitration clause specifically encompassed "any third party involved" and claims or controversies between the lender, borrower, and "third parties who are not signatories to this loan agreement" to the extent permitted by law. The *Bailey* court did not

---

[13]The application of equitable estoppel by a non-signatory against a signatory has been controversial since its inception. *See* Frank Z. LaForge, *Inequitable Estoppel: Arbitrating with Non-Signatory Defendants Under Grigson v. Creative Artists*, 84 Tex. L. Rev. 225 (2005). The short history of the doctrine has seen its application expand beyond traditional contract principals and begin to threaten the basic principal that a party cannot be compelled to arbitrate a matter without its agreement. *See* J. Douglas Uloth & J. Hamilton Rial III, *Equitable Estoppel as a Basis for Compelling Nonsignatories to Arbitrate–A Bridge Too Far?*, 21 Rev. Litig. 593 (2002). Despite the expanding literature on *Grigson*, the Court is aware of no primary or secondary authority examining the additional question raised in this case regarding when one non-signatory can compel another non-signatory to arbitration.

discuss precisely how the non-signatory insurance companies were able to get their disputes into arbitration against the non-signatory wife, but this Court reads *Bailey* for the proposition that the broader arbitration clause permitted the appeals court to make the finding.

A similar analysis applies to the second authority cited by Amstar and Thompson, *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308, 1311 (11th Cir. 2003). The Eleventh Circuit in *Blinco* first held that a non-signatory borrower under the note could be compelled to arbitration based on the principal of equitable estoppel because her claims were based exclusively on the note itself. *Id.* at 1312. Next, the court dealt with claims of other non-signatories against the non-signatory borrower. *Id*. at 1311. The court considered the claims of successor entities of the original lender-signatory, and other entities that were affiliated with the successor of the original lender-signatory that serviced the notes that the latter created. *Id*. Considering the relationship between these non-signatories and the original lender-signatory, as well as the clause at issue, the court held that:

> the language of the arbitration clause at issue is broad enough to permit both Green Tree entities to invoke it, regardless of their signatory status....[b]ecause the [non-signatory] claims derive from a 'relationship' that 'results from' the Note (i.e., loan servicing), the arbitration clause easily encompasses both Green Tree Servicing and Green Tree Investment as alleged servicers of the Note.

*Id*. at 1312.

The Court is aware of no authority on point that would permit it to compel Sharp's claims against Amstar and Thompson to arbitration. In both *Blinco* and *Bailey*, the non-signatory that was attempting to compel arbitration against the other non-signatory was operating under a broad arbitration clause. As excerpted above, the *Blinco* non-signatories could snare third-parties with claims that derived from a relationship that results from the note. In contrast, the non-signatory

defendants in the underlying action, Amstar and Thompson, are defending a claim against a non-signatory defendant, Sharp, under a narrow arbitration clause that doesn't explicitly permit consideration of third-parties and collateral claims.

Moreover, in the same way that the fairness inquiry of *Grigson* permits the Court to apply equitable estoppel against Indian Gold, it makes it impossible to do the same with Sharp. *See Bridas*, 345 F.3d at 361 ("it is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others."). Because equitable estoppel has never been applied to compel a non-signatory to arbitrate with another non-signatory under these circumstances, the Court declines to exercise its equitable power to compel Sharp to arbitrate his dispute against Amstar and Thompson.[14]

The Court cannot say, at this stage of the proceedings, what claims Sharp has in his individual capacity against Amstar and Thompson that are distinct from Indian Gold's claims arising out of the loan agreement. Therefore, it cannot say that his claims are solely those that arise out of the CMLC loan agreement. Second, Sharp did not sign the loan agreement containing the arbitration provision, and that provision was not broad enough to explicitly cover third-parties and their claims against the CMLC entities. Therefore, Sharp has successfully raised a genuine issue of material fact as to whether he should be forced to submit his claims

---

[14] The purpose of the FAA was "to place arbitration agreements on equal footing with other contracts... [and] not [to] require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002). Though the Court recognizes and applies the *Grigson* doctrine, it cannot overstep the boundaries therein without doing violence to principles recognized by the United States Supreme Court that caution against pushing *Grigson*'s reasoning to its breaking point. *See also Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion").

against Amstar and Thompson to arbitration, making summary judgment on that issue improper.

## THE DISPUTE FALLS WITHIN THE AGREEMENT

The claims asserted by Indian Gold fall squarely within the arbitration clause of the loan agreement. The clause encompasses "fees or costs in connection with CMLC's mortgage products and services." Despite being lodged only against Amstar and Thompson, the heart of the complaint deals with the alleged failure of CMLC to deliver financing for the Indian Gold project. Because the arbitration clause precisely covers these facts, the dispute falls within the arbitration agreement.

The Defendants are wrong to assert an automatic entitlement to a jury trial on the issue of arbitrability. The Fifth Circuit has held that "although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement ... it is well-established that '[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one.'" *Amer. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (internal citations omitted). The Defendants to this action have made no showing that "under prevailing law" they would "be relieved of [their] contractual obligations to arbitrate if [their] allegations proved to be true." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992).

## CONCLUSION

Although Amstar and Thompson were not signatories to the agreement containing the arbitration clause, the Court concludes that the principals of equitable estoppel as articulated in

*Grigson* should be applied to compel Indian Gold to arbitrate its dispute against Amstar and Thompson. The defendant Indian Gold has not raised a genuine issue of material fact to prevent summary judgment on this issue.

However, the Court cannot extend the holding of *Grigson* to compel two non-signatories to arbitration, and hence cannot compel Sharp to arbitrate his dispute against Amstar and Thompson. The defendant Sharp has raised a genuine issue of material fact to prevent summary judgment on this issue.

IT IS THEREFORE ORDERED AND ADJUDGED that the Plaintiffs' motion for summary judgment as to Defendant Indian Gold is **granted.**

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiffs' motion for summary judgment as to Defendant Timothy Sharp is **denied**.

SO ORDERED AND ADJUDGED this 25th day of September, 2007.

>  *s/Keith Starrett*
>  UNITED STATES DISTRICT JUDGE